71 So.2d 23

## STONE

v.

### STATE ex rel. J. S. WALTON & CO.

I Div. 554.

Supreme Court of Alabama.

March 4, 1954.

Geo: E. Stone, pro se, and Gordon & Jansen, Mobile, for appellant.

Lyons, Pipes & Cook, Mobile, for appellee.

STAKELY, Justice.

Appellee, State of Alabama ex rel. J. S. Walton & Co., a partnership composed of Norman Walton and J. S. Walton, Jr., filed in the Circuit Court of Mobile County a petition for writ of mandamus addressed to the appellant, George E. Stone, as Treasurer of Mobile County, Alabama, praying for an alternative writ of mandamus directing him as such treasurer forthwith to register and pay a warrant drawn in favor of the appellee by the Board of Revenue and Road Commissioners of Mobile County, Alabama.

Upon trial of the cause the court entered a final decree granting the writ of mandamus and directing that the appellant register and pay the warrant drawn by the Board of Revenue and Road Commissioners of Mobile County in favor of the appellee. From the decree granting the writ George E. Stone, as Treasurer of Mobile County, has prosecuted this appeal to this court.

The case, among other things, calls for a consideration of certain local legislative acts and constitutional provisions applicable solely to Mobile County. A brief historical review of these laws will be a helpful predicate to a statement of the case. In 1924 Constitutional Amendment XVIII was ratified, permitting Mobile County to increase its indebtedness beyond the previous constitutional limits for the purpose of road construction, after first being authorized by public election. In 1927 an enabling act, No. 246, Local Acts 1927, pp. 151–163, was enacted by the legislature, setting up detailed procedure for taking advantage of this amendment. The Act of 1927 was subsequently amended in 1931, No. 160, Local Acts 1931, pp. 51–54, and again in 1945, No. 349, Local Acts 1945, pp. 167–171, all of which can be referred to as the Craft Acts, though the last amendatory act does not actually bear that name. In 1931 there was passed an act, No. 93, Local Acts 1931, p. 27, which can be re-ferred to as the Garrett Act, authorizing the Board of Revenue and Road Commissioners of Mobile County to pay in cash from the general funds of said county, or with interest bearing warrants payable from such funds, any amounts now due or that may hereafter become due contractors for work in connection with the building of public roads and bridges in said county.

Under the Craft Acts the Board of Revenue and Road Commissioners of Mobile County in 1947 called a special election and submitted to the voters a road building program, including Wulff Road, Improvement No. 20, asking for authority to increase the indebtedness of the county for the construction of that particular project in the total amount of $113,445 and to issue bonds in the same amount. Upon approval of the voters the board entered into a written contract on November 4, 1948, with J. S. Walton & Company for the construction of that road, according to certain specifications, for the price "approximately" of $105,305.03. Bonds were issued in the amount of $113,445 for that particular project.

Thereafter on March 21, 1950, the Board of Revenue and Road Commissioners passed and allowed Claim No. 563— American National Bank A/c J. S. Walton & Co., and ordered payment of $8,531.85 from the 1947 Bond Issue Fund, for which warrant dated March 16, 1950, was issued. This exhausted the 1947 Bond Issue Fund. On April 4, 1950, the Board of Revenue and Road Commissioners passed and allowed claim for the balance under the contract of $2,531.35, from the General Funds of Mobile County, for which warrant dated April 11, 1950, was issued. When the latter warrant was presented to the Treasurer of Mobile County for payment, he declined to honor it on the ground that it was illegal and void, although there was sufficient money in the General Funds to cover the claim.

The position of the appellant is that the warrant which is sought to be enforced in this case is illegal and void because the contract upon which it was is-

sued was let under authority of a popular election pursuant to Local Act No. 246 of 1927, as amended (Craft Acts), and is invalid insofar as it exceeds the limit of indebtedness approved by the voters. In analyzing the position here presented, it is appropriate to consider first the position of George E. Stone, as Treasurer of the County of Mobile. The authorities in this state hold that the treasurer of a county pays at his own risk a warrant issued without proper authority. Mobile County v. Williams, Judge, 180 Ala. 639, 61 So. 963; Stone v. State ex rel. Mobile Broadcasting Corp., 223 Ala. 426, 136 So. 727. It is further true that in this state the governing body of the county in passing a claim does not act judicially. Its allowance of a claim is not conclusive. Mobile County v. Williams, Judge, supra; Wyatt v. Parrish, 255 Ala. 145, 50 So.2d 424; State ex rel. Towle v. Stone, 236 Ala. 82, 181 So. 281.

It is obvious that the legality of the warrant here issued must, accordingly, turn upon the authority of the governing body of the county to make the payment under the contract with the appellee. The Board of Revenue and Road Commissioners has no inherent powers, but only such powers as are vested in it by statute within constitutional limitations. Unless there be authority in the board to make the payment out of the General Funds of the County under the contract with the appellee, his claim is invalid. Board of Revenue and Road Commissioners of Mobile County v. State ex rel. Drago, 172 Ala. 155, 54 So. 995; Stone ex rel. Towle v. State, supra; Mobile County v. Williams, Judge, supra; Laney v. Jefferson County, 249 Ala. 612, 32 So.2d 542.

This brings us to a consideration of the contract in the case at bar. In order to determine its validity, the pertinent provisions of the constitution and legislative enactments should be examined.

First is Amendment XVIII of the Constitution of 1901, which appears at pp. 311–312, Title 1, Code of 1940. Enabling acts passed by the legislature referred to above have set up a method of procedure to be followed by the governing body wishing to avail itself of the rights and privileges given under Amendment XVIII. The Craft Acts as amended contain 34 paragraphs and practically every one of these paragraphs shows that an increase in the indebtedness of the county is referred to and emphasized.

The contract in the case at bar was let by the governing body of Mobile County expressly designated as being "authorized by Act No. 246 of the Local Acts of Alabama of 1927, as amended." In this resolution is contained the following:

"Seventh: The total sum by which it is proposed to increase the indebtedness of Mobile County by reason of said Improvement is $113,445.00,"

and also

"Nine: The total amount of bonds which it is proposed to issue to pay the cost of such improvement is $113,-445.00."

The proof in the case shows that an election was called for construction of this road at the meeting of the Board of Revenue and Road Commissioners held August 19, 1947. The minutes of this meeting contain the following:

"Proposition 20. Creation of additional indebtedness of the County of Mobile in the sum of $113,445.00 and a proposed bond issue of $113,445.00, bonds of said County, to be sold for the purpose of construction and improving the following * * *."

The official return of the foregoing election, as shown by the minute book covering the meeting of the Board of Revenue and Road Commissioners of October 7, 1947, as to Improvement No. 20 was: "For 3225 Against 517."

It is evident that the contract which provided for the road building program, including Wulff Road—Improvement No. 20, was let on authority voted by the people. The indebtedness for the road construction work was incurred upon the authority of Local Act No. 246 (Craft Acts, as amended). No other contracts for the aforesaid improvement were ever entered into as shown by the

proof or any other resolutions passed or other notice given of any additional amount to be added to the contract as originally let to appellee. The proof shows further that the sum of $113,445 has been expended. There were 30 projects contained in this program. There was no other road known as No. 20, other than this specific project or improvement.

It is insisted that by resorting to the additional powers granted under Amendment XVIII and pursuant to the enabling acts passed with reference thereto, the governing body of Mobile County committed itself to the position that it was necessary to incur additional indebtedness over and above the limit otherwise provided in the constitution. It is claimed that such commitment is equivalent to the fact that the county had already reached its normal debt limit. But it does not follow that because the governing body undertook to proceed under the authority of Amendment XVIII and the enabling acts that Mobile County had reached its normal debt limit under the provisions of § 224 of the Constitution of Alabama of 1901.

■ The result of the election was to authorize an increase in the limit of indebtedness of the county for road building purposes by $113,445, to issue bonds to secure the increase and to levy taxes to pay it. But that vote of the people did not serve to prevent the Board of Revenue and Road Commissioners of Mobile County from exercising its power otherwise conferred, provided in doing so they did not increase the constitutional debt limit of Mobile County. In other words, although it appears that the Board of Revenue and Road Commissioners proceeded to act under Amendment XVIII and the enabling acts, that is not controlling. We must look to the law which is applicable and not just the law under which they may have claimed to act. Jarrell v. Farmers' Nat. Bank of Opelika, 253 Ala. 119, 43 So. 2d 116.

Our search of the record fails to show that there is any proof in the record that Mobile County had reached its normal debt limit under § 224 of the Constitution when the contract was made in 1948. The letting of the contract created the debt. Hagan v. Commissioners Court of Limestone County, 160 Ala. 544, 49 So. 417, 37 L.R.A.N.S., 1027. As a matter of fact there is no proof that at any time Mobile County has reached its limitation of indebtedness under § 224 of the Constitution.

■ We must, therefore, consider this case as though Mobile County had not reached its normal debt limit and the rights of appellant to avoid payment of the warrant sought to be enforced in this case are dependent solely on the action of the governing body of the county in authorizing payment of the warrant out of the general funds of the county, when the proceeds of the special bond issue had been exhausted. We must keep in mind at this point that there was sufficient money in the general funds of the county to cover the warrant which was issued and which is sought to be enforced in this case.

■ Assuming, therefore, that the indebtedness represented by the warrant in this case does not exceed the aggregate indebtedness allowed under § 224 and the proceedings under Amendment XVIII, there is no reason why the governing body of Mobile County could not issue the warrant and require its payment. As found by the trial court the provisions of the Garrett Act expressly authorize such payment. The Act reads as follows:

"Be it Enacted by the Legislature of Alabama. That the Board of Revenue and Road Commissioners of Mobile County, are hereby authorized to pay in cash from the general funds of the County, or with interest bearing warrants payable from such funds, any amounts now due or that may hereafter become due contractors for work in connection with the building of public roads and bridges in said County, with interest from the date such amounts became due, also any demurrage in connection with the transportation of materials for same."—[Local Acts 1931, p. 27.]

Furthermore the powers given to the courts of county commissioners or boards of revenue or other like governing bodies

of the several counties of the state under § 43, Title 23, Code of 1940, is ample to sustain the power of the Board of Revenue and Road Commissioners of Mobile County to make the contract sought to be enforced in the case at bar. We set out the foregoing section of the Code, which we have referred to as follows:

"The courts of county commissioners, boards of revenue, or other like governing bodies of the several counties of this state have general superintendence of the public roads, bridges and ferries within their respective counties so as to render travel over the same as safe and convenient as practicable. To this end they have legislative, judicial, and executive powers, except as limited in this chapter. Courts of county commissioners, boards of revenue, or courts of like jurisdiction are courts of unlimited jurisdiction and powers as to the construction, maintenance and improvement of the public roads, bridges and ferries in their respective counties, except as their jurisdiction or powers may be limited by the local or special statutes of the state. They may establish, promulgate and enforce rules and regulations, make and enter into such contracts as may be necessary, or as may be deemed necessary or advisable by such courts, or boards, to build, construct, make, improve and maintain a good system of public roads, bridges and ferries in their respective counties, and regulate the use thereof; but no contract for the construction or repair of any public roads, bridge or bridges shall be made where the payment of the contract price for such work shall extend over a period of more than ten years." Herbert v. Perry, 235 Ala. 71, 177 So. 561; Bullock County v. Sherlock, 242 Ala. 262, 5 So.2d 800.

It results that the judgment of the lower court is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.